ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| CENTRO DE PERIODISMO INVESTIGATIVO, INC.<br><br>Parte Recurrida<br><br><br>v.<br><br><br>SEBASTIÁN NEGRÓN REICHARD, en su capacidad oficial como Secretario del **DEPARTAMENTO DE DESARROLLO ECONÓMICO Y COMERCIO**; ESTADO LIBRE ASOCIADO DE PUERTO RICO<br><br>Parte Peticionaria | TA2026AP00070 | *Apelación acogida como Certiorari,* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2025CV07643<br><br>Sala: 808<br><br>Sobre: *Mandamus*; Derecho constitucional de acceso a la información pública |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y la Jueza Prats Palerm.

Monge Gómez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 29 de enero de 2026.

Compareció ante este Tribunal la parte apelante, el Departamento Económico y Comercio (en adelante, "DDEC" o "Apelante"), mediante recurso de apelación presentado el 20 de enero de 2026. Nos solicitó la revocación de la *Sentencia* emitida y notificada por el Tribunal de Primera Instancia, Sala Superior de San Juan (en adelante, "TPI"), el 21 de noviembre de 2025. A través del referido dictamen, el TPI declaró "No Ha Lugar" la "**Moción de Desestimación**" presentada por el Apelante y declaró "Ha Lugar" el pleito de epígrafe.

Por los fundamentos que expondremos a continuación, *revocamos* la *Sentencia* apelada.

**I.**

El caso de autos tuvo su origen el 26 de agosto de 2025, con la presentación de una "**Petición de *Mandamus***" por parte del Centro de Periodismo Investigativo, Inc. (en adelante, "CPI" o "Apelado") en contra del Secretario del DDEC, Hon. Sebastián Negrón Reichard, y el Gobierno de Puerto Rico sobre acceso a la información pública. Mediante la misma, expresó que el 18 de marzo de 2025, la Sra. Damaris Suárez Lugo, periodista del CPI, envió una solicitud de información al DDEC mediante la cual peticionó información relacionada a los incentivos, exenciones y decretos otorgados bajo la Ley Núm. 60-2019, según enmendada, mejor conocida como el "Código de Incentivos de Puerto Rico", 13 LPRA sec. 45001 *et seq* (en adelante, la "Ley Núm. 60").

En particular, alegó que requirió lo siguiente: (1) nombre de la entidad; (2) tipo de entidad; (3) representante legal y/o decretos; (4) fecha de otorgación; (5) tipo de incentivo, exención y/o decretos; (6) tipo de actividad turística; (7) valor de la inversión; (8) detalles de la exención y/o crédito contributivo; (9) ubicación física; (10) cualquier otro tipo de información que obre en el expediente de las entidades y (11) copia de los informes anuales por actividad exenta.

Señaló que, el 1 de abril de 2025, la Lcda. Miriam Sánchez Arroyo, Oficial de Información del DDEC, copiando al Lcdo. Luis B. Méndez del Nido, Asesor Legal General del DDEC, envió una misiva en respuesta a la solicitud de la periodista del CPI. Puntualizó que, mediante dicha comunicación, la Lcda. Sánchez Arroyo invocó la sección 1000.03 (f) de la Ley Núm. 60, *supra,* disposición que establece que la existencia de un decreto u otro beneficio concedido por dicho estatuto, así como el nombre de un negocio exento y el capítulo del Subtítulo B del Código bajo el cual se otorgó el decreto, constituyen información pública, e incorporó un enlace que presuntamente dirigía a la página web del DDEC.

Relató que el 18 de julio de 2025, la señora Suárez Lugo le envió al DDEC una carta de seguimiento mediante la cual informó que el enlace compartido no dirigía a ninguna dirección web viva y habilitada. Expresó

que, no obstante lo anterior, pudo acceder por cuenta propia a una tabla en formato Excel titulada: "Tabla Histórica Aprobados Oficina de Incentivos 2024", la cual se encuentra en la página cibernética del Apelante. Indicó que, tras examinar la referida información, reiteró la solicitud cursada el 18 de marzo de 2025 y la ajustó con el propósito de que se incluyera información relativa a las compañías y/o corporaciones vinculadas a la industria turística desde el año 2020 hasta la fecha de su entrega. Además, requirió que se le produjeran datos específicos y desagregados para cada entidad, compañía y/o corporación, tales como: (1) concesionario o nombre de la entidad; (b) concesión otorgada; (c) fecha de otorgación; (d) tipo de actividad turística; (e) inversión elegible (cantidad en dinero); (f) crédito concedido (cantidad en dinero); (g) empleos generados (nuevos); (h) representante legal/principal oficial; y (i) ubicación. Asimismo, requirió que se le entregara copia de todo documento o información pública que obrara en el expediente de las entidades corporativas y los informes anuales sometidos por actividad exenta, junto a su reporte de *Agreed Upon Procedure*, según fuera aplicable.

Esgrimió que, el 1 de agosto de 2025, la Sra. Mariluz López Acevedo, Oficial de Información del DDEC, acusó recibo de la comunicación y le informó que el 5 de agosto de 2025 estaría recibiendo una respuesta. Expuso que, en dicha fecha, el DDEC envió una carta solicitando una prórroga adicional hasta el 19 de agosto de 2025 para completar la gestión requerida. Destacó que, a pesar de lo anterior, el 19 de agosto de 2025, la Lcda. Sánchez Arroyo invocó nuevamente la sección 1000.03 (f) de la Ley Núm. 60, *supra*, y explicó que los datos desagregados no se consideraban públicos, de conformidad con dicha disposición legal. Por último, afirmó que, al día de la presentación de la "**Petición de Mandamus**", ni la Lcda. Sánchez Arroyo, ni el Lcdo. Méndez del Nido, ni la Sra. López Acevedo, ni funcionario alguno habían provisto la información requerida.

En vista de lo anterior, le peticionaron al Tribunal que declarara "Ha Lugar" su solicitud y, en consecuencia, ordenara al Lcdo. Negrón Reichard,

en su capacidad de Secretario del DDEC, a cumplir con su deber ministerial de entregar los siguientes datos: (1) la información de las cincuenta y nueve (59) entidades corporativas listadas en la pestaña "Tourism 60-2051.01 2053.01" del documento en Excel titulado "Tabla Histórica Aprobados Oficina de Incentivos 2024" que se encuentra en la página web del DDEC, así como cualquier otra entidad cuyo incentivo, exención o decreto haya sido aprobado con posterioridad al 2024; (2) datos específicos y desagregados para cada entidad, compañía y/o corporación; (3) copia de todo documento o información pública que obre en el expediente de las entidades corporativas y (4) para cada entidad, compañía y/o corporación, los informes anuales sometidos por actividad exenta, junto a su reporte de *Agreed Upon Procedure* (AUP).

Así las cosas, el 22 de septiembre de 2025, el DDEC presentó una "**Moción de Desestimación**" mediante la cual sostuvo que el recurso instado por el CPI tiene como propósito forzar al DDEC a actuar en abierta contravención de su propia ley habilitadora y de la Ley Núm. 60, *supra*. Acentuó que, contrario a lo alegado por el Apelado, la información que se pretende obtener no constituye información pública, por lo que no existe un ningún deber ministerial de divulgarla. Igualmente, adujo que el DDEC cuenta con un reclamo de confidencialidad expresamente reconocido en la Ley Núm. 60, *supra*, y otros estatutos aplicables, además de estar protegido por el privilegio consagrado en la Regla 514 de las de Evidencia, 32 LPRA Ap. VI, R. 514. Expresó que ordenar la divulgación de información confidencial pondría en riesgo la confianza de inversionistas y concesionarios, minando así la credibilidad y seriedad con la que el DDEC opera en el ejercicio de atraer nuevas inversiones e industrias a Puerto Rico. Por último, argumentó que ya cumplió con divulgar la información pública en su poder, conforme delimita y autoriza la Ley Núm. 60, *supra*. En armonía con lo anterior, le solicitó al TPI que denegara la petición instada por el CPI y procediera con la desestimación de la misma.

En respuesta a ello, el 3 de octubre de 2025, el CPI presentó una "**Moción en Cumplimiento de Orden y en Oposición a Solicitud de**

**Desestimación**", a través de la cual reiteró que los campos de información sobre incentivos, exenciones y decretos otorgados por el DDEC vinculados a la industria de turismo constituyen información pública susceptible de divulgación. Igualmente, sostuvo que el DDEC no ha descartado su peso probatorio de establecer de forma precisa e inequívoca que existe un interés apremiante que supere el interés público de fiscalizar cómo el Estado maneja los gastos fiscales de Puerto Rico. Además, afirmó que ninguna de las excepciones de confidencialidad invocadas, ya sean estatutarias, evidenciarias o administrativas, impiden que se divulgue la información en cuestión. Por último, expuso que el DDEC pretende privar al pueblo y a la prensa de la información necesaria para debatir públicamente en torno a los méritos de los programas de incentivos, así como el impacto económico que tienen en Puerto Rico.

El 14 de octubre de 2025, el DDEC presentó su "**Réplica a Moción en Cumplimiento de Orden y en Oposición a Solicitud de Desestimación**" mediante la cual subrayó que la Ley Núm. 60, *supra*, contiene una disposición expresa que garantiza la confidencialidad de la información sometida por los negocios exentos y sus accionistas. Resaltó que dicha cláusula responde a un interés gubernamental apremiante de proteger información sensitiva, como parte de los esfuerzos de promover la confianza necesaria para el desarrollo económico del país. Afirmó que la actuación del DDEC se enmarca plenamente dentro de su ley habilitadora y de los principios constitucionales que regulan el balance entre transparencia y confidencialidad en la gestión pública. Así pues, solicitó nuevamente que el foro de instancia desestimara la "**Petición de Mandamus**" o, en la alternativa, que la deniegue en sus méritos.

El 21 de octubre de 2025, el CPI presentó una "**Dúplica en Oposición a Solicitud de Desestimación**" en la que adujo que el principio de especialidad es inaplicable en el presente caso y que las disposiciones de la Ley Núm. 60, *supra*, no pueden ir por encima de la Constitución de Puerto Rico. Especificó que las excepciones de confidencialidad bajo la Ley Núm. 60, *supra*, ceden ante el derecho fundamental de acceso a la

información. De igual forma, esbozó que la petición de la señora Suárez está dirigida exclusivamente a requerir información de persona jurídicas que no albergan una expectativa de intimidad que les permita invocar excepción alguna. Por último, alegó que el DDEC no realizó ningún esfuerzo para explicar cómo y por qué debe aplicar el privilegio de información oficial con relación a la información pública desagregada sobre incentivos, exenciones y decretos otorgados por el DDEC y vinculados a la industria del turismo. De conformidad con lo anterior, le solicitó al TPI que declarara "No Ha Lugar" la "**Solicitud de Desestimación**" presentada por el DDEC.

Finalmente, el 21 de noviembre de 2025, el TPI dictó *Sentencia* declarando "Ha Lugar" el recurso de *mandamus* presentado por el CPI. En consecuencia, le concedió al DDEC un término de diez (10) días para proveer la información solicitada. El 12 de enero de 2026, el DDEC presentó una "**Moción Solicitando la Suspensión de la Ejecución de la Sentencia al Amparo de la Ley Núm. 156-2025**" en la que destacó que el 14 de diciembre de 2025 se introdujeron enmiendas importantes a las disposiciones de la Ley Núm. 141-2019, según enmendada, mejor conocida como la "Ley de Transparencia y Procedimiento Expedito para el Acceso a la Información Pública", 3 LPRA sec. 9911 *et seq.* Expuso que las referidas enmiendas inciden directamente sobre la ejecución de la *Sentencia,* la cual no es final ni firme*.* A tenor con lo anterior, solicitó la suspensión provisional de la ejecución de la *Sentencia.*

Oportunamente, el 13 de enero de 2026, el CPI presentó su "**Oposición a Solicitud de Suspensión de Sentencia y Solicitud de Orden de Desacato**" en la que solicitó que se encontrara incurso en desacato al DDEC por no cumplir con la *Sentencia* del 21 de noviembre de 2025. Alegó que la Ley Núm. 156-2025 que enmendó la Ley Núm. 141-2019, *supra*, no tiene aplicación retroactiva ni afecta los derechos adquiridos a través de la referida *Sentencia*. Asimismo, afirmó que el alegado incumplimiento del DDEC vulnera los derechos constitucionales al acceso a la información y a las libertades de prensa y expresión que le

asisten. Considerando lo expuesto, le peticionó al TPI que declarara "No Ha Lugar" la *Solicitud de Suspensión de Sentencia,* encuentre incurso en desacato al Lcdo. Negrón Reichard y le ordene a cumplir inmediatamente con la *Sentencia* del 21 de noviembre de 2025.

El 13 de enero de 2026, el DDEC presentó su "**Réplica a Solicitud de Suspensión de la Sentencia y Solicitud de Orden de Desacato**" mediante la cual aclaró que no ha solicitado la aplicación retroactiva de la Ley Núm. 156-2025, *supra*, ni había planteado que dicha ley invalida automáticamente la *Sentencia* emitida el 21 de noviembre de 2025. De igual forma, arguyó que la ejecución de una orden judicial no final ni firme debe regirse por el derecho vigente al momento de su cumplimiento, particularmente cuando la ejecución conlleva consecuencias irreversibles. En vista de lo anterior, le solicitó al TPI que denegara la solicitud de desacato presentada por el CPI y suspendiera provisionalmente la ejecución de la referida *Sentencia*. Dicha solicitud fue denegada mediante *Resolución* de 20 de enero de 2026.

Aun insatisfecho con dicho proceder, el DDEC presentó el recurso que nos ocupa y le imputó al foro de instancia la comisión de los siguientes errores:

**1. Erró el Tribunal de Primera Instancia al ordenar la divulgación de información no considerada pública y clasificada como confidencial según reconocido en las Secciones 1000.03(f) y 1000.04(g) del Código de Incentivos**

**2. Erró el Tribunal de Primera Instancia al concluir que la Ley Núm. 141-2019 prevalece sobre el Código de Incentivos, sin realizar un análisis adecuado de armonización entre ambos estatutos y soslayando el principio de especialidad, así como la cláusula expresa de supremacía contenida en la Sección 6070.70 del propio Código de Incentivos**

**3. Erró el Tribunal de Primera Instancia al descartar, sin análisis adecuado, la aplicación del privilegio de información oficial dispuesto en la Regla 514 de Evidencia**

**4. Erró el Tribunal de Primera Instancia al determinar que el reclamo de confidencialidad invocado por el DDEC sobre la información solicitada por el CPI no satisface un interés gubernamental apremiante, sustituyendo indebidamente el juicio de la Asamblea Legislativa por su propio criterio**

**5. Erró el Tribunal de Primera Instancia al concluir que el reclamo de confidencialidad invocado por el DDEC no sobrevive el escrutinio estricto, partiendo de una premisa jurídica incorrecta sobre la inexistencia de un interés gubernamental apremiante y aplicando de forma errónea dicho estándar constitucional**

**6. Erró el Tribunal de Primera Instancia al abusar de su discreción al crear y aplicar una distinción entre personas jurídicas y personas naturales para efectos de divulgación de la información solicitada, sin base estatutaria ni determinación legislativa alguna, y al ordenar un remedio que altera y rediseña el esquema de confidencialidad dispuesto por el Código de Incentivos, excediendo la función adjudicativa del foro primario**

**7. Erró el Tribunal de Primera Instancia al conceder el recurso extraordinario de *mandamus*, a pesar de que la actuación impugnada no constituía el incumplimiento de un deber ministerial claro e imperativo, sino una controversia jurídica sujeta a interpretación y a la existencia de remedios ordinarios adecuados**

El 27 de enero de 2026, compareció el CPI mediante "**Escrito en Cumplimiento de Resolución y Alegato en Oposición del Centro de Periodismo Investigativo**".

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**II.**

**A.**

El *mandamus* es un recurso que se expide para ordenar a una persona o personas naturales, corporación o tribunal de inferior jerarquía a cumplir o efectuar una actuación que forma parte de sus deberes o facultades. Carrasquillo Román v. Inst. Correccional, 204 DPR 699, 713 (2020); Art. 649 del Código de Enjuiciamiento Civil, 32 LPRA sec. 3421. Su expedición es de carácter discrecional y su procedencia dependerá del tipo de acto que se pretenda ejecutar. Báez Galib y otros v. C.E.E. II, 152 DPR 382, 391-392 (2000). "[S]ólo procede para ordenar el cumplimiento de un deber ministerial, que no admite discreción en su ejercicio, cuando no hay otro mecanismo en ley para conseguir dicho remedio". Acevedo Vilá v. Aponte Hernández, 168 DPR 443, 454-455 (2006). Este recurso extraordinario "no procede cuando hay un remedio ordinario dentro del curso de ley, porque el objeto del auto no es reemplazar remedios legales

sino suplir la falta de ellos". <u>AMPR v. Srio. Educación, E.L.A.</u>, 178 DPR 253, 266-267 (2010).

La petición de *mandamus* debe ser evaluada a la luz de varios requisitos, a saber: (1) que el demandado tenga un deber u obligación ministerial impuesto por ley; (2) que el peticionario tenga un interés especial en el derecho que reclama; (3) que el deber de actuar de la agencia y el derecho del peticionario surjan de la ley de forma clara y patente; (4) que el peticionario no tiene otro remedio legal para hacer valer su derecho; y (5) que el tribunal entienda que los fines de la justicia obligan a su expedición, luego de estimar el efecto que tendrá la expedición del auto. 32 LPRA secs. 3421-3423.

> Por ello, "[s]u expedición no se invoca como cuestión de derecho, sino que descansa en la sana discreción del foro judicial". <u>Carrasquillo Román v. Inst. Correccional</u>, *supra*, pág. 713. Cónsono con lo anterior, el deber ministerial que se invoca por vía del *mandamus* no puede tratarse de "una directriz o una disposición que permite hacer algo, sino de un mandato específico que la parte demandada no tiene opción para desobedecer". <u>Íd</u>

**B.**

Nuestra jurisdicción ha reconocido como corolario al ejercicio de los derechos de libertad de palabra, prensa y asociación consagrado en la Constitución de Puerto Rico, el derecho de todo ciudadano al acceso a la información pública. Art. II, sec. 4, Const. PR, LPRA, Tomo I; <u>Kilómetro O, Inc. v. Pesquera López</u>, 207 DPR 200, 207 (2021). De esta forma, se permite al ciudadano evaluar y fiscalizar la función gubernamental. <u>Trans Ad de PR v. Junta de Subastas</u>, 174 DPR 56, 67 (2008). Además de que fomenta "discusiones informadas y fortalece la facultad de la ciudadanía de participar efectiva e inteligentemente en los asuntos gubernamentales". <u>Engineering Services v. AEE</u>, 205 DPR 136, 146 (2020). Consistente con este mandato constitucional, el Artículo 409 del Código de Enjuiciamiento Civil reconoce que todo ciudadano tiene derecho a inspeccionar y a fotocopiar cualquier documento público de Puerto Rico, sujeto a las excepciones dispuestas por ley. 32 LPRA sec. 1781.

A tales efectos, se aprobó la Ley Núm. 141-2019, con el fin de pautar mecanismos procesales sencillos, ágiles y económicos para la solicitud y

acceso a documentos e información pública. *Véase*, Exposición de Motivos de la Ley Núm. 141-2019, 3 LPRA sec. 9911 *et seq.* Debemos partir de la premisa de que, al momento de interpretar las disposiciones de este estatuto, se deberá hacer de la forma más liberal y beneficiosa para el solicitante. Art. 12 de la Ley Núm. 141-2019, *supra*, 3 LPRA sec. 9922.

El Artículo 3 de dicho estatuto dispone lo relacionado a la política pública del Gobierno de Puerto Rico, en cuanto al acceso a la información pública. Específicamente, se establece lo siguiente:

(1) La información y documentación que produce el gobierno se presume pública y accesible a todas las personas por igual.

(2) La información y documentación que produce el gobierno en sus estudios, transacciones y en el ejercicio de la autoridad pública, de manera directa o delegada, son patrimonio y memoria del pueblo de Puerto Rico.

(3) El derecho constitucional de acceso a la información requiere la transparencia gubernamental.

(4) Toda información o documento que se origine, conserve o reciba en cualquier dependencia del Gobierno, aunque se encuentre bajo la custodia de un tercero, se presume público y debe estar accesible al Pueblo y la prensa.

(5) El derecho de acceso a la información pública es un pilar constitucional y un derecho humano fundamental.

(6) El acceso a la documentación e información pública tiene que ser ágil, económico y expedito.

(7) Toda persona tiene derecho a obtener la información y documentación pública, sujeto a las normas y excepciones aplicables.

(8) El Gobierno de Puerto Rico establece en la presente Ley una política de apertura a la información y documentación, que incluya la disponibilidad de la tecnología y de los avances necesarios para hacer valer el derecho de los solicitantes a acceder a la información y documentación pública de forma oportuna, objetiva, veraz, completa, reutilizable, procesable y disponible en formatos accesibles, inalterados e íntegros. 3 LPRA sec. 9913.

De igual forma, el Artículo 4 de la Ley Núm. 141-2019 indica que la entidad gubernamental deberá divulgar aquella información "sobre su funcionamiento, la ejecución y control de las funciones delegadas, así como toda documentación pública que sea realizada por la entidad de forma rutinaria". 3 LPRA sec. 9914. Por otra parte, dicha pieza legislativa reconoce que la parte que solicita la información no tiene que acreditar

algún interés particular o jurídico. Art. 6 de la Ley Núm. 141-2019, 3 LPRA sec. 9916. No obstante, al momento de solicitarla "deberá incluir al menos una dirección o correo electrónico para recibir notificaciones, el formato en que desea recibir la información y una descripción de la información que solicita". Íd. La agencia o entidad gubernamental deberá entregar la información solicitada en un término no mayor de diez (10) días laborables, contado a partir del momento en que se solicitó la información. No obstante, si la solicitud se realizó ante una oficina regional de la agencia o entidad gubernamental, la ley concede un término de quince (15) días, prorrogable por un término único de diez (10) días laborables adicionales. Art. 7 de la Ley Núm. 141-2019, 3 LPRA sec. 9917.

Ahora bien, de una agencia o entidad gubernamental denegar proveer la información pública solicitada, deberá especificar por escrito los fundamentos para ello. Íd. A raíz de dicha denegatoria o ante la falta de entrega de información solicitada en el término establecido, la ley permite al solicitante presentar un Recurso Especial de Acceso a Información Pública ante el Tribunal de Primera Instancia. Íd. Finalmente, el estatuto dispone que, en caso de conflicto entre sus disposiciones y la de cualquier otra legislación, "prevalecerá aquella que resulte más favorable para la persona solicitante de información y documentación pública". 3 LPRA sec. 9922.

Dicha disposición pone de manifiesto que el derecho al acceso a la información pública está sujeto a las limitaciones que el Estado establezca. Bhatier Gautier v. Gobernador, 199 DPR 59, 82 (2017). Ahora bien, dichas restricciones deben ser justificadas, toda vez que la denegatoria de información pública no debe ser caprichosa y arbitraria. Colón Cabrera v. Caribbean Petroleum, 170 DPR 582, 590 (2007). De esta manera, se ha establecido que para que el Estado pueda reclamar la confidencialidad de información confidencial es indispensable que: (1) una ley lo declara; (2) la comunicación está protegida por algún privilegio evidenciario; (3) la divulgación de la información puede vulnerar derechos fundamentales de terceros; (4) se trate de un confidente, conforme la Regla 515 de las de

Evidencia, 32 LPRA Ap. VI, R. 515; o (5) sea información oficial a la luz de la Regla 514 de Evidencia, 32 LPRA Ap. VI, R. 514. *Véase*, Kilómetro O, Inc. v. Pesquera López, *supra*, pág. 210

Sin embargo, para que alguna de estas excepciones prospere, es necesario que el Estado satisfaga los criterios de un escrutinio estricto. Íd. Por ello, al efectuar dicho análisis, estamos llamados a ser "cautelosos en conceder livianamente cualquier pedido de confidencialidad del Estado". Santiago v. Bobb y El Mundo, Inc., 117 DPR 153, 159 (1986).

**C.**

La Ley Núm. 60-2019, según enmendada, mejor conocida como el "Código de Incentivos de Puerto Rico", 13 LPRA sec. 45001 *et seq*, fue promulgada con el fin ulterior de consolidar las decenas de decretos, incentivos, subsidios, reembolsos y beneficios contributivos o financieros existentes. *Véase*, Exposición de Motivos de la Ley Núm. 60-2019. Asimismo, persigue promover un ambiente propicio, así como las oportunidades y herramientas necesarias para fomentar el desarrollo económico sostenible en Puerto Rico, estableciendo el marco legal y administrativo que regirá la solicitud, evaluación, concesión y denegación de incentivos por parte del Gobierno de Puerto Rico. Íd. Además, procura fomentar la medición eficaz y continua de los costos y beneficios de los incentivos otorgados, con el fin de maximizar el impacto de la inversión de fondos públicos, así como dotar al Gobierno de Puerto Rico de estabilidad, certeza y credibilidad en todo lo relacionado con la inversión privada y mejorar la competitividad económica del País. Íd.

En cumplimiento con dichos objetivos, y en lo concerniente al caso de autos, la Sección 1000.03 (f) de la Ley Núm. 60, *supra*, dispone expresamente que la existencia de un decreto u otro beneficio provisto por dicho estatuto presupone que el nombre del negocio exento y el capítulo del Subtítulo B bajo el cual se otorgó el decreto constituyen información pública. 13 LPRA sec. 45003. No obstante lo anterior, dicha disposición limita el alcance de la divulgación al establecer que "**cualquier otra**

**información** relacionada con el Negocio Exento se divulgará de forma agregada por sector o industria, y no por persona". Íd. (énfasis suplido).

Por su parte, la Sección 1000.04 (g) de la referida pieza legislativa refuerza dicho esquema al garantizar expresamente la confidencialidad de la información que los negocios exentos y sus accionistas sometan al DDEC. En detalle, dispone lo siguiente:

> Todo Negocio Exento y sus accionistas tendrán derecho a que se les garantice la confidencialidad de la información que someta al DDEC. **Ninguna persona ajena al DDEC, que no esté autorizada por el Negocio Exento y sus accionistas, tendrá acceso a tal información, a menos que expresamente lo permita este Código u otra ley**. El Negocio Exento y sus accionistas, además, tendrán derecho a conocer el propósito para el cual se le solicita la información, el uso que se le dará y las consecuencias de no proveerla. 13 LPRA sec. 45004 (énfasis suplido).

Por consiguiente, de una lectura integrada de las disposiciones antes transcritas se desprende claramente que el legislador delimitó de manera precisa el alcance de la información considerada pública, circunscribiéndola exclusivamente a la existencia del decreto o beneficio, el nombre del negocio exento y del Subtitulo B aplicable. En contraste, toda información adicional relacionada con dichos negocios, incluyendo aquella de carácter particularizado, desagregados o contenidos en los expedientes administrativos, se encuentra sujeta a un marco de confidencialidad expresamente establecido por ley.

**III.**

En el caso ante nuestra consideración, el DDEC nos solicitó la revocación de la *Sentencia* del TPI en la cual se le ordenó divulgar la información solicitada por el CPI.

Los señalamientos de error esgrimidos se encuentran íntimamente relacionados, por lo que se discutirán de manera conjunta. En síntesis, el Apelante sostiene que el TPI erró al: (1) ordenar la divulgación de información no considerada pública, (2) concluir que la Ley Núm. 141-2019, *supra*, prevalece sobre la Ley Núm. 60, *supra*, (3) descartar la aplicación del privilegio de información oficial dispuesto en la Regla 514 de Evidencia, *supra,* (4) determinar que la información solicitada por el CPI no satisface un interés gubernamental apremiante ni sobrevive el escrutinio estricto, (5)

aplicar una distinción entre personas jurídicas y naturales para efectos de la información solicitada y al (7) conceder el recurso extraordinario de *mandamus*. Veamos.

Del expediente que obra ante este foro se desprende que, el 26 de agosto de 2025, el CPI presentó un recurso de *mandamus* ante el TPI solicitando que se ordenara al DDEC divulgar información relacionada con incentivos, exenciones y decretos otorgados a entidades corporativas vinculadas a la industria del turismo, incluyendo datos específicos y desagregados, documentos que obran en sus expedientes administrativos y los informes anuales por actividad exenta con sus correspondientes informes de *Agreed Upon Procedures* (AUP). Luego de múltiples incidencias procesales, el foro de instancia concluyó que la mayoría de la información reclamada no revestía carácter confidencial y, en consecuencia, dispuso para su divulgación por parte del DDEC.

Conforme adelantáramos en los acápites anteriores, la Ley Núm. 60, *supra*, estableció un esquema normativo específico que delimita la información considerada pública en el contexto de los incentivos contributivos, restringiéndola a la existencia del decreto o beneficio otorgado, el nombre del negocio exento y el capítulo del Subtítulo B aplicable, al tiempo que dispone de un régimen de confidencialidad estatutaria respecto a toda información adicional sometida por dichos negocios ante el DDEC, salvo autorización expresa del propio Código u otro estatuto. 13 LPRA sec. 45003; 45004.

Tras un análisis detenido y ponderado del expediente ante nuestra consideración, incluyendo la "**Petición de *Mandamus***", la "**Moción de Desestimación**", su correspondiente *Oposición*, la *Réplica* y *Dúplica*, hemos arribado a la conclusión de que el foro de instancia erró al ordenar la divulgación de la información solicitada. Nos explicamos.

De entrada, es menester destacar que, aun cuando el acceso a la información pública constituye un pilar esencial de nuestro sistema democrático, dicho derecho constitucional no es absoluto y admite limitaciones legítimas cuando así lo dispone la ley, en atención a intereses

públicos de mayor peso, como ocurre bajo el esquema de confidencialidad establecido en la Ley Núm. 60, *supra.*

En el presente caso, el DDEC atendió la solicitud inicial del CPI al remitirle un enlace electrónico con la información que la Ley Núm. 60, *supra*, reconoce como pública. Si bien el CPI alegó que dicho enlace no se encontraba debidamente habilitado, no es menos cierto que admitió que, por su propia cuenta, logró acceder a una tabla en formato Excel disponible en el portal electrónico del DDEC, la cual contenía la información agregada relacionada con entidades vinculadas a la industria del turismo que reciben decretos bajo el estatuto.

Dicha circunstancia resulta particularmente relevante, pues evidencia que el DDEC hizo accesible al CPI la información pública permitida por la Sección 1000.03 (f) de la Ley Núm. 60, *supra*, a saber, aquella divulgable de forma agregada por sector o industria. En consecuencia, cualquier información adicional solicitada por el CPI respecto a las compañías de turismo, incluyendo datos específicos y desagregados por entidad, documentos que obran en los expedientes administrativos y los informes anuales sometidos por actividad exenta, excede el marco de divulgación autorizado por el estatuto antes citado.

Conforme establece manifiestamente la Sección 1000.04(g) de la Ley Núm. 60, *supra*, toda información adicional sometida por los negocios exentos y sus accionistas ante el DDEC se encuentra protegida por un régimen de confidencialidad estatutaria, salvo que el propio Código u otra ley disponga expresamente lo contrario. Así pues, la divulgación de información individualizada o contenida en los expedientes administrativos solicitada por el CPI no solo carece de base legal, sino que contraviene el esquema normativo diseñado por nuestra Asamblea Legislativa para proteger la información sensitiva que los negocios exentos y sus accionistas someten al Estado como parte del proceso de concesión de incentivos.

No obstante lo anterior, el foro *a quo* ordenó la divulgación de información que el estatuto clasifica como confidencial, extendiendo

indebidamente el alcance de la información pública y sustituyendo el criterio expresamente adoptado por el legislador por su propio juicio. Al así proceder, ignoró el carácter especial de la Ley Núm. 60, *supra*, y desatendió el interés gubernamental que subyace a la protección de dicha información.

Por su parte, reconocemos que el Artículo 12 de la Ley Núm. 141, *supra*, establece que dicho estatuto debe ser interpretado de la manera más amplia y favorable a la persona que solicita acceso a información pública cuando existen conflictos entre dicha pieza legislativa y otra ley. 3 LPRA sec. 9922. No obstante, tal mandato interpretativo no puede entenderse como una licencia para eludir el claro objetivo legislativo de salvaguardar determinada información que, por su naturaleza, fue expresamente catalogada como confidencial cuando se trata de negocios exentos. En efecto, reiteramos que adoptar una lectura absoluta e irrestricta de dicha disposición implicaría desplazar indebidamente la función legislativa y vaciar de contenido las excepciones de confidencialidad creadas por nuestra propia Asamblea Legislativa. Es decir, emplear un análisis autómata de dicha disposición legal implicaría, *de facto*, desplazar todas las excepciones o asuntos confidenciales reconocidos estatutariamente por el legislador por el mero hecho de que la Ley Núm. 141-2019, *supra*, establece que todo conflicto deba ser evaluado de manera que resulte más favorable para el solicitante. De hecho, somos de la opinión de que este tipo de evaluación adjudicativa convertiría en letra muerta aquellas excepciones que el legislador, en su sabiduría, entendió debían reconocerse en nuestra jurisdicción.

Así pues, aunque las disposiciones de la referida ley deben interpretarse de forma liberal y en beneficio del solicitante de información, en este caso, el CPI, ello no nos exime de considerar el propósito del legislador al incorporar una excepción al principio base de acceso a la información pública, a saber: la protección de datos sensibles o información de carácter restringido que los negocios exentos y sus accionistas someten al Estado como parte integral del proceso de concesión de incentivos

contributivos y económicos. Sumado a ello, no vemos por qué el foro primario efectuó un análisis segmentado entre personas jurídicas y personas naturales cuando el lenguaje incorporado por la Ley Núm. 60, *supra*, aplica a todo **negocio exento y a sus accionistas**.

Habiendo concluido que la información solicitada se encuentra amparada por las disposiciones de confidencialidad contenidas en los Artículos 1000.03(f) y 1000.04(g) de la Ley Núm. 60, *supra*, corresponde entonces evaluar si dichas disposiciones superan el crisol del escrutinio estricto, según lo requiere nuestra jurisprudencia. Bajo este estándar de análisis constitucional, el Estado tiene la carga de demostrar la existencia de un interés gubernamental apremiante y que la clasificación adoptada resulta necesaria para alcanzar dicho interés. Cónsono con lo anterior, es la postura del DDEC que la confidencialidad de la mayoría de los datos requeridos por el CPI responde a un interés gubernamental apremiante, consistente en la protección de información sensitiva como parte de los esfuerzos dirigidos a fomentar la confianza indispensable de las entidades e individuos que se benefician de los incentivos creados por ley conducentes al desarrollo económico que tanto requiere el país.

Contrario a lo resuelto por el foro de instancia, entendemos que, en el presente caso, existe un interés apremiante en la revitalización de la economía de Puerto Rico. Dicho interés no es meramente especulativo, sino que emana expresamente de la exposición de motivos de la Ley Núm. 60, *supra*, la cual contempla que la compleja realidad económica y fiscal de Puerto Rico exige una revisión integral de los programas de incentivos, con el fin de dotarlos de coherencia, estructura y pertinencia, ante la fragmentación y falta de armonía que históricamente ha caracterizado tales estrategias. Ello amparado en la realidad del aumento de la deuda pública y la precariedad de la situación fiscal de Puerto Rico.

De hecho, se ha reconocido "la precariedad de la economía como una realidad que necesariamente pesa en la definición del ámbito de la acción gubernamental bajo el poder de razón de Estado". <u>Domínguez Castro v. E.L.A.</u>, 178 DPR 1, 16 (2010). Dentro de este contexto, en el

ejercicio de dicho poder, la Legislatura "goza de amplia facultad para aprobar reglamentación económica dirigida a promover el bienestar de la comunidad". Defindini Collazo *et al.*, v. E.L.A., Cotto, 134 DPR 28, 74 (1993). Desde esa perspectiva, el único límite que tiene nuestra Asamblea Legislativa lo es aquella que promulga la garantía del debido proceso de ley. Íd.

De igual forma, la precitada pieza legislativa reconoce que una de las herramientas principales de las que dispone el Gobierno de Puerto Rico para atender y contrarrestar la contracción económica del país es la creación de un entorno de estabilidad, certeza y confianza para la inversión, lo cual necesariamente implica ofrecer garantías razonables de confidencialidad respecto a la información sensitiva que los participantes del programa se ven obligados a divulgar al Estado.

El estatuto es claro al disponer que solo el nombre del negocio exento y el Capítulo bajo el cual se otorgó el decreto es la única información pública, y, por tanto, el restante de la información es confidencial por virtud expresa de la ley. No importa que se perciba que la misma se hizo de manera general o no; el hecho de que exceda de la data que la sección 1000.03 (f) de la Ley Núm. 60, *supra*, clasificó como pública impide su producción, independientemente de que se trate de personas naturales o jurídicas. Contrario a la conclusión del TPI, sí entendemos que la garantía de confidencialidad de la Ley Núm. 60, *supra*, responde a un interés apremiante en la medida en que asegura la confianza de las corporaciones tenedoras de decretos y se propende al mejoramiento de la economía.

Dicho de otro modo, existe un interés apremiante por parte del Estado de atender la crisis fiscal y económica estructural que amenaza la capacidad del Gobierno de Puerto Rico para cumplir con sus funciones constitucionales esenciales. La estabilidad fiscal del Estado, la protección del erario y la viabilidad económica del gobierno constituyen intereses públicos de la más alta jerarquía constitucional, incluso bajo el estándar más riguroso de revisión. La naturaleza de persona jurídica de las partes envueltas resulta irrelevante, toda vez que la urgencia y legitimidad del

interés apremiante en juego persisten inalteradas. Lo anterior obedece a que nuestra Carta Magna no exige que el Estado permanezca inerte frente a una emergencia financiera que amenaza su continuidad.

Aplicando estos principios, este Tribunal reconoce que la crisis fiscal de Puerto Rico, marcada por insolvencia gubernamental, la reducción de la base contributiva, la emigración sostenida y el colapso de inversión privada, no constituye una dificultad económica ordinaria, sino una amenaza existencial a la capacidad del Estado para cumplir con sus deberes constitucionales. En ese contexto, la adopción de políticas públicas dirigidas a expandir la base contributiva mediante la atracción de capital externo y la actividad económica nueva responde a un interés que supera el umbral del interés apremiante requerido por el escrutinio estricto.

Por último, a diferencia de lo determinado por el foro de instancia, entendemos que la información objeto de la presente controversia cualifica como información oficial, conforme disponen la Regla 514 de las de Evidencia, *supra*. En específico, se trata de datos que fueron obtenidos por funcionarios públicos en el curso y como parte del desempeño de sus funciones oficiales. Asimismo, dicha información no ha sido divulgada por los canales oficiales correspondientes ni se encuentra disponible o accesible al público en general. Por consiguiente, resulta evidente que la información en controversia está cobijada por la protección que dispone el privilegio sobre información oficial.

En suma, a la luz del marco legal aplicable y de los hechos del presente caso, concluimos que la información solicitada por el CPI no es susceptible de divulgación individualizada, por estar protegida por disposiciones estatutarias que imponen su confidencialidad y por existir un interés apremiante del Estado de mejorar la economía del país a través de la concesión de exenciones y decretos. No estando en controversia la producción de la información que sí pública por parte del DDEC al CPI, colegimos que no procedía la expedición del recurso extraordinario del *mandamus*, pues el Apelante cumplió con su deber ministerial de producir

aquella información que no está protegida por el manto de la confidencialidad.

**IV.**

Por los fundamentos que anteceden, los cuales hacemos formar parte integral del presente dictamen, *revocamos* la *Sentencia* apelada y declaramos "No Ha Lugar" la "**Petición de *Mandamus***" presentada por el CPI.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones